**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MONTANA**

In re

**LANCE ADAIR BENDER**,                         Case No.  **12-61449-13**

Debtor.

# MEMORANDUM OF DECISION

At Butte in said District this 28th day of March, 2013.

Pending in this Chapter 13 case is the Debtor's Amended Objection (Docket No. 73) to Proof of Claim No. 3 filed by Independence Bank (the "Bank").  A hearing on Debtor's Objection was held after notice at Great Falls on March 8, 2013.  Debtor Lance Adair Bender ("Bender" or "Debtor") appeared and testified, represented by attorney Gregory W. Duncan of Helena, Montana.  Debtor's mother Karen Bender also testified.  The Bank was represented by attorney Chris R. Young of Havre, Montana.  Debtor's Exhibits ("Ex.") A, C, D, E, G, H, K, L, and Bank's Ex. 10, were admitted into evidence.  At the conclusion of the parties' cases-in-chief the Court took the Debtor's Amended Objection under advisement.  After review of the record and applicable law Debtor's Amended Objection will be overruled for the reasons set forth below.

This Court has jurisdiction of this Chapter 13 case under 28 U.S.C. § 1334(a).  Allowance of claims against the estate, and determinations of the validity and extent of liens, are core

1

proceedings under 28 U.S.C. § 157(b)(2)(A) & (K).  This Memorandum includes the Court's findings of fact and conclusions of law.

## FACTS

Bender is self employed and lives in Havre.  After he suffered an injury in 2005 he received a workers' compensation settlement, and disability award.  He deposited the disability award into his personal checking account at Independence Bank, and he used those to purchase equipment and businesses so that he could work for himself.  Ex. G is a bank statement from the Bank for an account ending in #2931 in Bender's name, dated 9/21/2009.  Ex. G shows the deposit of his disability award in the sum of $179,995.38 after payment of attorney fees on August 31, 2009.

Bender purchased a vending machine business in August of 2009.  He testified that he hired an attorney to set up corporations for his businesses.  Bender's vending machine company is owned by a corporation named Bender Vending.  He testified that his vending machine business has approximately 40 vending machines located all over Havre, and in addition he services another 6 or 8 vending machines for Coke and Pepsi.  He testified that another business, Blue Bear Car Wash, also is incorporated and he runs both businesses under a parent company called Bender, Inc.  Ex. E is a printout of a business entity search at the Montana Secretary of State identifying Bender, Inc., as an active general business type entity in good standing, and names Bender as its registered agent.

Bender purchased the Blue Bear Car Wash after he purchased his vending machine company.  He testified that he financed the purchase of the car wash through Independence Bank, and that he gave the Bank a trust indenture on the real property.  Ex. C is the "Real Estate Trust

2

Indenture" ("TI") signed by Bender dated 10/21/09.  In addition to the real property securing his

Bank loan for the car wash, Ex. C has on page 10 of 12 a paragraph numbered 31:  "U.C.C.

Provisions" which, if certain boxes are checked, are applicable.  Bender checked the boxes next

to "Fixture Filing" and "Personal Property."  The "Personal Property" paragraph provides:

> Grantor grants to Lender a security interest in all personal property located on or
> connected with the Property, including all farm products, inventory, *equipment*,
> accounts, documents, instruments, chattel paper, general intangibles, *and all other
> items of personal property Grantor now owns now or in the future and that are
> used or useful* in the construction, ownership, operation, management, or
> maintenance of the Property (all of which shall also be included in the term
> "Property")).  The term "personal property" specifically excludes that property
> described as "household goods" secured in connection with a "consumer" loan as
> those terms are defined in applicable federal regulations governing unfair and
> deceptive practices.

Ex. C, p. 10.  (emphasis added).

Bender testified that the Bank did not explain paragraph 31 of Ex. C to him.

Notwithstanding, he signed Ex. C on 10/21/09 and the loan closed.  Above Bender's signature on

page 11 of Ex. C is a paragraph entitled "Signatures" which provides: "By signing below,

Grantor agrees to the terms and covenants contained in this Security Instrument and in any

attachments.  Grantor also acknowledges receipt of a copy of this Security Instrument on the date

stated on page 1."  The TI was recorded 10/27/2009 in the Hill County Clerk and Recorder's

office.

Bender also signed Ex. D, a "Commercial Security Agreement" dated 10-21-2009.

Bender testified that the Bank did not explain Ex. D to him when he signed it.  Above Bender's

signature on page 1 of Ex. D it provides:  "Debtor agrees to the terms on pages 1 and 2 of this

Agreement and acknowledges receipt of a copy of this Agreement."  Ex. D provides in pertinent

3

part:

> This Agreement will secure all sums advanced by Secured Party under the terms of this Agreement and the payment and performance of the following described Secured Debts that . . . Debtor . . . (Borrower) owes to Secured Party: . . .

> All Debts.  All present and future debts, even if this Agreement is not referenced, the debts are also secured by other collateral, or the future debt is unrelated to or of a different type than the current debt.

* * * *

> SECURITY INTEREST.  To secure the payment and performance of the Secured Debts, Debtor gives Secured Party a security interest in all of the Property described in this Agreement that Debtor owns or has sufficient rights in which to transfer an interest, *now or in the future, wherever the Property is or will be located*, and all proceeds and products of the Property.  "Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property.  "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property.  This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and Secured Party is no longer obligated to advance funds to Debtor or Borrower.

> PROPERTY DESCRIPTION.  The Property is described as follows:

* * * *

> Equipment:  *All equipment*, including, but not limited to, machinery, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools.  The Property includes any equipment described in a list or schedule Debtor gives to Secured Party, but such a list is not necessary to create a valid security interest in all of Debtor's equipment.

Ex. D (emphasis added).

Bender testified that the Bank did not have him give it a list of his equipment, and that he understood that Ex. D gave the Bank a security interest only in the equipment of the car wash.

4

Bender insisted that the Bank's security would not have included any of the vending machine equipment or vehicles owned by his vending machine company.

Ex. D authorizes the Bank "to do anything Secured Party deems reasonably necessary to protect the Property and Secured Party's interest in the Property." Ex. D further provides:

> PERFECTION OF SECURITY INTEREST. Debtor authorizes Secured Party to file a financing statement covering the Property. Debtor will comply with, facilitate, and otherwise assist Secured Party in connection with obtaining possession or control over the Property for purposes of perfecting Secured Party's interest under the Uniform Commercial Code.
>
> * * * *
>
> Debtor agrees to sign, deliver, and file any additional documents and certifications Secured Party considers necessary to perfect, continue, or preserve Debtor's obligations under this Agreement and to confirm Secured Party's lien status on the Property.

Bender testified that the Bank did not point out that provision of Ex. D to him when he signed it, that he did not see a financing statement, and that the Bank did not tell him that vending company equipment would be included in the Bank's security. Bender's mother testified that she and her son had discussions with the Bank about what the loan and security documents involved, but the Bank did not go through the documents with them line by line. The Bank filed a financing statement with the Montana Secretary of State on 10/26/09 covering collateral including equipment. Ex. K.

Bender testified that he hurt his back, and cannot not lift heavy pallets of soda for his vending machines, or move his vending machines. His mother testified that, after Bender had set up his corporations, he decided to buy a piece of equipment referred to as a "Skidsteer[1]" to help

---

[1]Ex. L has photographs of the Skidsteer, which is a small front end loader with 4 rubber tires. Besides a loader it can accommodate other attachments such as a pickup broom, and for

with the loading and unloading for the vending machines.  Bender purchased a Skidsteer from Yellowstone County Implement approximately a month after he bought the car wash.

He testified that he paid for the Skidsteer with a check written on his personal checking account at Independence Bank.  He admitted on cross examination that he did not have a corporate business account.  Ex. H is a bank statement dated 12/21/2009 for Bender's personal account ending in 2931.  Ex. H shows an unnumbered check dated 11/19/09 written in the sum of $26,700.00.  Bender testified that the $26,700 check is the one he wrote to purchase the Skidsteer.

Ex. 10 is a copy of the check.  Bender testified that he had just opened a checking account and had a limited number of checks in his initial checkbook.  The memo line on Ex. 10 states the following: "Blue Bear for cleaning Bays."  Bender testified that, at first, the check was meant only to purchase the broom attachment, but instead he used a single check to purchase the Skidsteer and the broom instead of 2 checks.

Ex. A is a John Deere customer purchase order number 971502, dated November 4, 2009.  Bender testified that the salesman filled out Ex. A over the phone, and all he did was sign it.  Ex. A lists a total cash price for the Skidsteer of $27,700, consisting of $24,900 for the Skidsteer and another $2,800 for a "Pickup Broom" attachment.  Bender testified that he also purchased a weight kit and bucket.  Bender testified that the pickup broom attachment sweeps dirt into the bucket and is useful for his car wash business because it makes cleaning the troughs in the middle of the car wash bays easier, and that he used the Skidsteer at the car wash to clear paths and to clean the bay.  However, he testified that the weight kit was not used in the car wash, and

use as a forklift to load wooden pallets.

6

that he primarily used the Skid Steer in his vending machine business.

The customer's name at the top of Ex. A is Lance Bender, not Bender Vending, but the customer's signature at the end of Ex. A states "Lance A. Bender Pres."  Bender explained that he signed Ex. 10 as president of his corporation.   He testified that he purchased the Skidsteer over the phone, and directly beneath Bender's signature on Ex. A is the notation "By Phone." The date of acceptance at the bottom of Ex. A is 11/17/2009.

Bender did not produce any document at the hearing which shows that he transferred ownership of the Skidsteer to his corporation.  He placed a "Bender Vending" sign on the side of the Skidsteer.  Ex. L.  He testified that he has never had a Blue Bear Car Wash sign on the Skidsteer.  Bender testified that the Skidsteer was not located on the car wash property when he signed Ex. C, and that he did not purchase the Skidsteer for use at the car wash.

Bender testified that he understood that Ex. C gave the Bank a security interest only in personal property which he acquired through the car wash business or which earned money for the car wash from day to day, or was otherwise used or useful for the operation of the car wash. He testified that the Bank did not tell him that it would claim a security interest in the vending machine assets.  He testified that he only used the Skidsteer at his car wash to move snow[2], but mostly to move his vending machines, which he stored in one of the unused car wash bays[3]. Bender admitted that he used the car wash for storage for Bender Vending, but he testified that his use of one of the car wash bays for his vending machine business did not aversely affect his

---

[2]He testified that he shut down the car wash every winter when the temperature in Havre dropped below zero.

[3]Bender agreed to surrender the car wash to the Bank, and delivered the keys to the Bank's counsel at the hearing.

car wash business.  Bender's mother concurred that his use of the Skidsteer at the car wash was minimal.  Both testified that Bender did not purchase the Skidsteer for use at the car wash because it would not have been cost effective, since he easily could have hired other persons to perform snow removal at a much lower cost than the Skidsteer.

Bender's counsel asked him on direct examination if he believes the Bank has a security interest in the Skidsteer.  Bender answered "No."  The Bank claims a perfected security interest in the Skidsteer pursuant to the security agreements Bender signed, Ex. C and D.

Bender filed his voluntary Chapter 13 petition on September 6, 2012, and filed his Schedules and Statement of Financial Affairs on October 8, 2012.  He testified that losses in the car wash prompted him to file for bankruptcy relief, but that he has no evidence that the Bank ever attempted to repossess the Skidsteer at the car wash.

Independence Bank filed Proof of Claim No. 3 on December 5, 2012, asserting a claim in the amount of $188,157.15, and lists security described as "commercial real estate, car wash, accounts, inventory, equipment, products, proceeds & intangibles" with a total value of security stated in the amount of $190,000, and the basis for perfection described as "Recorded TI & UCC filing."  The Bank's original Claim 3 was not filed with documents showing that the debt exists and that a lien secures the debt.  After the Chapter 13 Trustee filed an objection based on the lack of security documents, Independence Bank filed an amended Proof of Claim 3 on February 11, 2013.  Ex. K.  The box on the amended claim is checked to indicate that it amends a previously filed Claim Number 3.

Attached to the amended Claim 3 is a Montana UCC Filing Acknowledgment dated October 26, 2009, identifying Bender as debtor and the Bank as a secured party and listing

8

equipment among the items of collateral on page 2, item no. 4. Also attached Ex. K a copy of

Ex. D, the "Commercial Security Agreement" dated 10-21-2009, signed by Bender and the Bank.

Debtor filed his Objection (Dkt. 45) to Independence Bank's Claim 3 on January 4, 2013, and

filed his Amended Objection on March 7, 2013.[4] Debtor objects to the Bank's Amended Proof

of Claim 3 as duplicative, and in addition on the grounds that the Bank does not hold a security

interest in any asset of the Debtor other than the Blue Bear Car Wash.

Bender closed the car wash, and surrendered the keys to the Bank at the March 8, 2013,

hearing. He testified that the Bank never discussed its claim of a security interest in the Skidsteer

with him, and that the Bank's security is limited to car wash assets. He answered "yes" when

asked on cross examination if he considered himself bound by all the documents he signed with

the Bank.

Debtor filed an amended Chapter 13 Plan on January 4, 2013, which failed to treat the

Bank as having an impaired secured claim. The Trustee filed objections to confirmation based

on the Plan's treatment of Independence Bank, but withdrew his objection and filed a consent to

confirmation on March 4, 2013. Independence Bank earlier filed objections to confirmation

based on the treatment of the claim and Skidsteer, and other collateral. With Debtor's surrender

of the car wash this decision on Debtor's Objection to the Bank's claim secured by the Skidsteer

will resolve the only issue remaining on confirmation. Debtor's counsel stated at the hearing that

if the Bank is allowed a claim secured by the Skidsteer the Debtor will provide for such claim in

a further amended plan.

---

[4]Debtor's original Objection to Claim 3 simply joined the Chapter 13 Trustee's
Objection, which the Trustee withdrew on February 11, 2013.

## DISCUSSION

Debtor's Objection to the Bank's claim alleges that it is duplicative, and that the Bank does not have a security interest in the Skidsteer.  The Debtor's Objection on the grounds the claim is duplicative is easily disposed of.  Ex. K states plainly that the Proof of Claim amends previously filed Claim Number 3.  The Bank filed its amended Proof of Claim in response to the Trustee's objection that the claim lacked the required security documents.  Montana Local Bankruptcy Rule 3001-2 ("Attachments to Proofs of Claim") requires that a proof of claim "shall include those documents required by F.R.B.P. 3001(c) and (d); and an itemized summary ...."  Rule 3001(c) provides that when a claim is based on a writing, the original or a duplicate shall be filed with the proof of claim."  As a result of the Bank's filing its amended claim the Trustee withdrew his objection to Claim 3.  As an amendment, the Bank's amended Proof of Claim is not duplicative and that objection is overruled.

Next, this Court does not decide the validity of the Bank's security interest in the Skidsteer in the instant contested matter because the Debtor has not followed proper procedure.  Under Rule 7001(2), an adversary proceeding is a proceeding to determine the validity, priority or extent of a lien or other interest in property.   Debtor's Objection is not an adversary proceeding, and thus the validity of the Bank's security interest in the Skidsteer or other collateral is not before the Court in the manner required by the Rule.  Further, Debtor's Amended Objection states that it is filed pursuant to Rule 3007.  Rule 3007(b), F.R.B.P., provides:

> **DEMAND FOR RELIEF REQUIRING AN ADVERSARY PROCEEDING**.
> A party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding.

10

Because of this procedural defect, Debtor's Amended Objection is overruled to the extent it seeks a determination of the validity of the Bank's security interest.

A proof of claim that is executed and filed in accordance with the Rules "shall constitute prima facie evidence of the validity and amount of the claim." Rule 3001(f); *see also Garner v. Shier (In re Garner)*, 246 B.R. 617, 620 (9th Cir. BAP 2000) ("There is an evidentiary presumption that a correctly prepared proof of claim is valid as to liability and amount."). A claim "is deemed allowed, unless a party in interest . . . objects." § 502(a). Upon objection, a bankruptcy court shall determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount except to the extent that— (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured. § 502(b)(1).

This Court discussed its longstanding rule governing allowance of claims *In re Eiesland*, 19 Mont. B.R. 194, 208-09 (Bankr. D. Mont. 2001):

> A validly filed proof of claim constitutes *prima facie* evidence of the claim's validity and amount. F.R.B.P. 3001(f). The Ninth Circuit recently explained the general procedure for allocating burdens of proof and persuasion in determining whether a filed claim is allowable in *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000):
>
> > A proof of claim is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a) and constitutes "*prima facie* evidence of the validity and amount of the claim" pursuant to Bankruptcy Rule 3001(f). See also Fed. R. Bankr.P. 3007. The filing of an objection to a proof of claim "creates a dispute which is a contested matter" within the meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief. See Adv. Comm. Notes to Fed. R. Bankr.P. 9014.
> >
> > Upon objection, the proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere

11

formal objection without more." *Wright v. Holm (In re Holm )*, 931 F.2d 620, 623 (9th Cir.1991) (quoting 3 L. King, Collier on Bankruptcy § 502.02, at 502-22 (15th ed.1991)); *see also Ashford v. Consolidated Pioneer Mort. (In re Consol. Pioneer Mort.)*, 178 B.R. 222, 226 (9th Cir. BAP 1995), *aff'd*, 91 F.3d 151, 1996 WL 393533 (9th Cir.1996). To defeat the claim, the objector must come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *In re Holm*, 931 F.2d at 623.

* * * *

"If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *In re Consol. Pioneer*, 178 B.R. at 226 (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir.1992)). The ultimate burden of persuasion remains at all times upon the claimant. *See In re Holm*, 931 F.2d at 623.

*See also Knize*, 210 B.R. at 778; *Matter of Missionary Baptist Foundation of America*, 818 F.2d 1135, 1143 (5th Cir.1987); *In re Stoecker*, 143 B.R. 879, 883 (N.D.Ill.1992), *aff'd in part, vacated in part*, 5 F.3d 1022 (7th Cir.), *reh'g denied* (1993).

Thus, the Bank's Proof of Claim No. 2 is *prima facie* evidence of the validity and amount of its claim under Rule 3001(f), and the Debtor has the burden of showing sufficient evidence and to "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Lundell*, 223 F.3d at 1039 (quoting *Holm*). This Court finds that Eric, as the objecting party, has not produced sufficient evidence to cause the burden to revert to the Bank to prove the validity and amount of its claim. *Lundell*, 223 F.3d at 1039 (quoting *In re Consol. Pioneer*, 178 B.R. at 226).

The analysis under *Lundell v. Anchor Const. Specialists* was reiterated by the Ninth Circuit *In re Los Gatos Lodge, Inc.*, 278 F.3d 890, 894 (9th Cir. 2002). Then in 2006 the BAP, in *Litton Loan Servicing, LP v. Garvida (In re Garvida)*, 347 B.R. 697, 706-07 (9th Cir. BAP 2006), discussed clarification provided by the United States Supreme Court decision *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000), regarding the "prima facie evidence" language in Rule 3001(f):

12

The Supreme Court has clarified that the Rule 3001(f) "prima facie evidence" language does not address the burden of proof in an objection to claim proceeding. *Raleigh*, 530 U.S. at 22 n. 2, 120 S.Ct. 1951.

It follows that, after *Raleigh*, Rule 3001(f) cannot be construed as allocating the burden of proof and, instead, operates merely as an evidentiary presumption that is rebuttable.

The evidentiary presumption of a prima facie case operates to shift the burden of going forward but not the burden of proof. [*Garner v. Shier (In re Garner)*, 246 B.R. 617, 622 (9th Cir. BAP 2000)]; *Diamant v. Kasparian (In re So. Cal. Plastics, Inc.)*, 165 F.3d 1243, 1248 (9th Cir. 1999) (although the creditor bears the ultimate burden of persuasion, the debtor must come forward with evidence to rebut the presumption of validity); 9 [COLLIER ON BANKRUPTCY ¶ 3007.01[1] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev. 2006)] ("once this burden of going forward to overcome the presumption is met, the ultimate burden is on the claimant").  Hence, at best, Litton's $33,435.46 proof of claim was entitled to the Rule 3001(f) evidentiary presumption, which is capable of being rebutted.

Assuming, without deciding, that the evidentiary presumption did apply, the mechanics of what it takes to rebut the Rule 3001(f) presumption are driven by the nature of the presumption as "prima facie" evidence of the claims validity and amount.  *Garner*, 245 B.R. at 621-22.  The proof of claim is more than "some" evidence; it is, unless rebutted, "prima facie" evidence.  *Id.*  One rebuts evidence with counter-evidence.  *Id.*

347 B.R. at 706-07.

In *Garvida* the objecting debtors satisfied their burden of going forward by proferring evidence at a hearing proving they made payments, and as a result the burden shifted to the creditor to prove the validity and amount of its claim, which it failed to prove when it failed to provide an accounting.  347 B.R. at 702, 707.  In the instant case, the Bank filed its amended Claim 3 including copies of the financing statement and security agreement.  Ex. K, D.  Having reviewed the amended claim and attached documents, this Court finds that they are sufficient to qualify for the evidentiary presumption under Rule 3001(f), and the burden of going forward shifts to the Debtor who must come forward with evidence to rebut the presumption of validity of

the claim.  *Garvida*, 347 B.R. at 706-07.

The Court concludes that Bender has not satisfied his burden of going forward to rebut the evidentiary presumption.  His testimony was contradictory, and is contradicted further by his exhibits.  He offered Ex. C, D, G, H, and K, which were admitted and together which show that he gave the Bank a security interest in equipment, including equipment which he owns now or in the future, and wherever the property is or will be located.  Under MONT. CODE ANN. § 28-2-904, the execution of a written contract supersedes all oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument.  Bender's mother testified that they talked about the security agreements, and no question exists in the record that Bender signed the agreements.  Bender has not alleged mistake, imperfection of the writings, or the validity of Ex. C and D, so there can be no evidence of the terms of the agreement other than the contents of the writing.  MCA § 28-2-905(1).

Bender argues that his understanding is that the Bank had a security interest only in car wash property or assets which were to be used to earn money for the car wash.  However, he admitted that he stored the Skidsteer at the car wash, and that he used the Skidsteer to clear snow at the car wash and clean the car wash bay using the Skidsteer and broom attachment.  The check he used to purchase the Skidsteer, Ex. 10, states on the memo line "Blue Bear for Cleaning Bays."  Debtor's own documentary evidence undermines his testimony, and as a result the Court concludes that the Debtor failed to satisfy his burden of going forward.

The financing statement was recorded at the Montana Secretary of State's Office, which appears to satisfy the requirement of MCA § 30-9A-310(1) for filing a financing statement to perfect the security interest in the Skidsteer equipment.

14

Bender argues that he purchased the Skidsteer as president of his corporation, and that it is property of his vending machine corporation.  The evidence shows, however, that Bender did not follow through on the corporate formalities required to transfer ownership of the Skidsteer to his corporation.  Bender set up the corporations for his businesses.  However, Ex. A shows that he purchased the Skidsteer personally.  Ex. H and 10 show that he paid for the Skidsteer with a check drawn on his personal checking account.  Bender failed to offer any credible evidence to show that he effectively conveyed the Skidsteer to his corporation.

Finally, Bender argues that the Bank did not explain provisions of the TI and security agreement which gave it a security interest in equipment, and that he did not read those provisions when he signed Ex. C and D.  The Montana Supreme Court has described similar contentions as "unfounded" in *Brown v. Merrill Lynch, Pierce, Finner & Smith, Inc.*, 197 Mont. 1, 14, 640 P.2d 453, 460 (1982), where the court wrote:

> "It is the general rule that a party will not be relieved, either by a court of equity or a court of law, where he executes an instrument without reading it, when he ... negligently fails to ascertain the contents of it; the other party not being guilty of any deceit or false representation as to its contents ..." *Hjermstad v. Barkuloo* (1954), 128 Mont. 88, 98, 270 P.2d 1112, 1117.

*See also Wright v. Blevins*, 217 Mont. 439, 444, 705 P.2d 113, 117 (1985).

Bender had the right to read Ex. C and D before signing, and by signing he acknowledged receipt of copies of the security agreements.  He and his mother both testified that the Bank discussed the terms of the agreements with them.  This was not a consumer loan, but rather a business transaction, and Bender demonstrated sufficient sophistication to consult with an attorney and form corporate entities to conduct his business.  The Court will follow the general rule and disregard his contentions that he had an understanding of the scope and extent of the

15

security documents which is different than the documents themselves.  Ex. C, D.

## CONCLUSIONS OF LAW

1.  This Court has exclusive jurisdiction of this case under 28 U.S.C. § 1334(a).

2.  This contested matter is a core proceeding concerning allowance or disallowance of claims against the estate and determining the validity or extend of a security interest under 28 U.S.C. § 157(b)(2)(B) and (K).

3.  A proceeding to determine the validity or extent of Independence Bank's security interest requires an adversary proceeding.  F.R.B.P. 7001(2).

4.  The Bank's Amended Proof of Claim 3 is sufficient to qualify for the evidentiary presumption under Rule 3001(f), and the burden of going forward shifted to the Debtor.  The Debtor failed his burden to come forward with evidence to rebut the presumption of validity of Amended Claim 3.

5.  Under the general rule, the Debtor will not be relieved, where he executed Ex. C and D without reading them, when he fails to ascertain the contents, the other party not being guilty of any deceit or false representation as to its contents.

**IT IS ORDERED** a separate Order shall be entered overruling Debtor's Amended Objection to Independence Bank's Amended Proof of Claim No. 3, and denying confirmation of Debtor's Amended Chapter 13 Plan filed January 4, 2013.  Debtor will be granted a period of fourteen days to file a further amended Plan providing treatment for Independence Bank's allowed claim secured by the Skidsteer, or other appropriate pleading, or this case will be dismissed without further notice or hearing.  In the event Debtor files a further amended Plan, a hearing on confirmation of Debtor's further amended Plan will be held on May 10, 2013, and

16

Debtor shall provide notice of such confirmation hearing to all parties in interest and all creditors.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

17